LAW OFFICES OF
JEFFREY LICHTMAN
11 EAST 44TH STREET
SUITE 501
NEW YORK, NEW YORK 10017
www.jeffreylichtman.com

JEFFREY LICHTMAN
JEFFREY EINHORN
DAVID GELFAND

PH: (212) 581-1001
FX: (212) 581-4999

March 2, 2023

**BY ECF**
Hon. Andrew L. Carter
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re: United States v. Streit, 22 CR 350 (ALC)**

Dear Judge Carter:

## A. INTRODUCTION

This letter is submitted on behalf of defendant Joshua Street in advance of his March 16, 2023 sentencing. With this letter, the defendant respectfully requests a sentence which is "sufficient, but not greater than necessary to comply with the purposes" set forth in 18 U.S.C. § 3553(a)(2) due, in part, to the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The basis for this request is as follows: *first*, [redacted] *second*, [redacted]; *third*, as a young adult and during the period when the streaming service at issue was created, Mr. Streit was caring for his mother who was being treated for, and ultimately succumbed to brain cancer; and *fourth*, a review of the defendant's life finds that there are many good deeds and Mr. Streit is actively employed – the prospects for his rehabilitation are therefore very good.

---

1 [redacted]

### B. THE DEFENDANT'S GUILTY PLEA AND RESULTING GUIDELINES RANGE

On June 13, 2022, Mr. Streit pleaded guilty pursuant to a plea agreement to Count One of a one count Information, which charged him with computer fraud through unauthorized access to obtain information from a protected computer, in violation of 18 U.S.C. § 1030. See May 6, 2022 Plea Agreement ("Plea Agreement") at p. 1. Mr. Streit faces no mandatory minimum term of imprisonment and a statutory maximum of five years. Id.

As recounted in the Presentence Investigation Report ("PSR"), the guideline for a violation of 18 U.S.C. § 1030(a)(2) is U.S.S.G. § 2B1.1, which sets the base offense level at six. PSR at ¶ 54. Because the defendant is held accountable for a loss of $2,995,272, 16 levels are added. PSR at ¶ 55. Further, because the offense involved 10 or more victims, two levels are added, and as the offense involved sophisticated means, another two levels are added. PSR at §§ 56-57. With three levels subtracted for acceptance of responsibility (§3E.1.1), the total offense level is 23, carrying a sentencing range in the Criminal History Category III of 57 to 60 months imprisonment by operation of the five year statutory maximum term of imprisonment.[2] PSR at ¶¶ 61-65, 112.

### C. THE DEFENDANT'S BACKGROUND AND THE NATURE OF THE OFFENSE – APPLICATION OF § 3553(a) FACTORS

Since the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), the Sentencing Guidelines have been rendered advisory in nature, leaving sentences to the district court's discretion, guided by the Guidelines and the other factors contained within 18 U.S.C. § 3553(a) and bounded by any applicable statutory minimum and maximum. This Section directs sentencing courts to "impose a sentence" that is "sufficient, but not greater than necessary, to comply with" the "need for the sentence ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; [and] to protect the public from further crimes of the defendant ...." 18

---

[2] The defendant's sentencing guidelines as stipulated in his plea agreement were 51-60 months imprisonment based on an identical offense level calculation, but a Criminal History Category II. See Plea Agreement at pp. 4-5. The additional two criminal history points responsible for the increase are due to the defendant's commission of the instant offense prior to being discharged from probation following a 2009 arrest when he was 20 years old for making five online purchases totaling $433.35 using credit card information that did not belong to him. PSR at ¶ 69.

U.S.C. §3553(a)(1)-(2) (emphasis supplied). In making this determination, courts are to consider "the nature and circumstances of the offense and the history and characteristics of the defendant ...." 18 U.S.C. § 3553(a)(1). Accordingly, we offer the following topics for the Court's consideration.

[redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

JEFFREY LICHTMAN

Hon. Andrew L. Carter
United States District Judge
March 2, 2023
Page 4

[redacted]

[redacted]

[redacted]

---

[redacted]

[redacted]

[redacted]

ii. **The History and Characteristics of the Defendant**

We have attached several character letters in support of this submission, reflecting the significant and meaningful role that Mr. Streit has played in the lives of friends, family members and colleagues. It would be impossible to include a letter from every individual whom the defendant has positively influenced and equally daunting to comment on each, still, the myriad letters on which we do remark paint a consistent picture of a "kind[]," "dependab[le]" (December 10, 2022 Letter of Andrew King, attached as Exhibit E) and "caring person," (December 12, 2022 Letter of Hunter Winey, attached as Exhibit F) who is "always generous with his time." December 21, 2022 Letter of Chris Howard, attached as Exhibit G; see also December 10, 2022 Letter of Daniel Jankowiak, attached as Exhibit H ("Josh has always been such a generous and kind person with so much passion and energy to offer the world"); Ltr. of Sarah Smith, Ex. D ("Listing the ways Josh has helped me and my appreciation for him would be an ill attempt because it really is limitless"); December 11, 2022 Letter of Jonathan Kurman, attached as Exhibit I ("Josh has been extremely active in his community, dedicating his time and resources to helping improve the lives if those less fortunate"). Sadly, were it not for this sentencing, many of Mr. Streit's exceptionally good deeds probably would have gone unrecognized.

[redacted]

[redacted]

[7] [redacted]

Around 2017, the time when the criminal conduct in this case began, Mr. Streit's mother, [redacted] was diagnosed with a brain cancer.[8] PSR at ¶ 81. Mr. Streit was dedicated to seeing that she was cared for until the end. Linda Shook, one of the defendant's mother's friends, perhaps best describes Mr. Streit's commitment to his mother and the effect her death had on him:

> It was hard on the family as her children were young adults and were losing their mother much too soon. Josh took it exceptionally hard as he was close to his mother, and she was his advocate. ...
>
> While his mother was sick he tried to spend as much time as he could with her. In the last year especially, Josh was there for her, trying to find ways for her to beat the brain tumor but also helping her to function daily and trying make her more comfortable. ... It was evident he loved his mother. After Jeanine's death, I believe it affected Josh greatly and he was a bit lost and not sure how to move forward.

Ltr. of Linda Shook, Ex. J. Similarly, friend Andrew King recalls in his letter to the Court:

> [M]y lasting impression of Josh will forever be the devotion, care, and dependability he displayed taking care of his mother when she was ailing. He spent upwards of 40 hours per week with her in the nursing home – in some stretches every waking minute for weeks on end – because he "[wanted] her to know she's not forgotten." He was there for her when doctors found new tumors and declared her out of options, even as other members of his family retreated from responsibility. In those moments Josh doubled down, devoting himself to his family and working hard to pay for the best possible care for his mother.

Ltr. of Andrew King, Ex. E; see also Ltr. of Sarah Smith, Ex. D ("promised he would take care of her until her last breath he fulfilled that promise"); March 1, 2023 Letter of Barbara Smith,

---

8 [redacted]

attached as Exhibit K ("with the passing of his mom about three years ago, I saw him go through the grieving process and it was terribly hard for him. He makes sure to visit his grandfather frequently and can share stories of his mom with him.").

A Dedicated and Reliable Friend, Mentor and Colleague

Nearly every letter submitted on behalf of Mr. Streit praises his dedication as either a friend or work colleague. See, e.g., December 12, 2022 Letter of Stephen Mann, attached as Exhibit L ("Josh is one of the brightest and most intelligent developers I have met in my career"); Ltr. of Barbara Smith, Ex. K ("When COVID started, Josh made sure I didn't go out for groceries so I would order them, and Josh would pick them up and deliver them to me. As I am older, he didn't want me to risk getting sick"). To begin, Chris Howard lauds:

> I started informally working for Josh some time around 2013 or 2014, but *Josh has always been a mentor to me. That's just who Josh is.* He has an abundance of energy, is always generous with his time, and sees potential in others that they likely do not see in themselves. And Josh pushes people to realize that potential.
>
> Josh has always pushed me to pursue my ideas no matter how farfetched or impractical they seemed. I once had an idea for an electronic poster that flipped through scenic video clips and as silly as it was, Josh took it seriously, and sat down with me to explore what I could do to start building it. The poster thing never panned out, but this was a normal kind of interaction between us: Josh being eager to help me out, while somehow managing various products and/or businesses. He never said "no, you can't do that" or "that would be too difficult." *Josh built up my confidence and mentored me so that I had technical expertise to apply and work at NASA.*

Letter of Chris Howard, attached as Exhibit G (emphasis supplied).

Daniel Jankowiak had a similar experience with Mr. Streit, informing the Court in his letter of the mentorship that he received from the defendant:

> In 2013 I was pretty aimless in life. I had graduated college a few years prior, was working a job I did not enjoy and dreading a future I had no aspirations for. On a whim I decided to build a website, but had very little idea on what I was doing. Through a friend I

> was connected with Josh and he was my go to source for the answers to the frustrating questions I constantly ran into. He didn't know me at the time and had no incentive to spend all those hours helping me that he did. With his guidance and support I launched my website and its success started the momentum that brought me to where I am today having been gainfully employed in the software industry for the last 9 years. *I can't know where I would be at now in life if it weren't for Josh's patience and kindness, but I can certainly say my life would be very different.*
>
> .... From my nine years of knowing him I have received nothing but kindness from him and have seen first hand his drive to do good on a micro level helping anyone he runs across as well as on macro level with all of his open source and charitable software projects.

Ltr. of Daniel Jankowiak, Ex. H (emphasis supplied). And Sarah Smith also praises his support in her letter: "I can't imagine if Josh wasn't around to just tell me I am doing a good job or support me during a mental breakdown .... He was a champion for me taking control of my mental health." Ltr. of Sarah Smith, Ex. D.

Friend Hunter Winey provides a particularly poignant account of the defendant's good nature, writing in his letter:

> Josh is someone who sees someone sad or struggling and will be the first person to pick them up and help them out. We were at a Twins game and there were a couple of foul balls that went over the head of a young fan who was only about 9 or 10. The kid had his glove and seemed so distraught that he missed out on a couple of opportunities to get a ball. I thought nothing of it, but Josh wouldn't stop bringing it up. He wanted to make a memory for this kid. He went to the merch store and bought a used in game ball and without saying anything ran down, put the ball in the kids glove and walked away. This is the kind of person I know Josh to be. The one who doesn't need any validation, just the gratification of helping others. I can't count the number of times I have reached out to Josh when I couldn't reach anyone else, like multiple times when my car was dead or stuck in the snow, struggling with interview preparation or writing cover letters, and talking through relationship problems.

Ltr. of Hunter Winey, Ex. F. And Serhii Bilyk writes in his letter of the assistance he received from the defendant after he fled Ukraine:

> When I fled from the war in Ukraine, I was left with nothing and struggled to make a new life for myself in Amsterdam. During that difficult time in my life I couldn't possibly work for many weeks, and Josh went out of his way to help me keep my job. His support and encouragement were invaluable during this time, and I will always be grateful to him for his kindness. *Josh's selflessness and caring nature have been a constant source of inspiration to me, and I believe that he has made a significant impact on my life and the lives of many others.*
>
> In addition to helping me during my time of need, Josh has also taught me a great deal. He has been a patient and encouraging mentor, and his guidance has helped me grow both personally and professionally. I believe that Josh has a unique ability to inspire and motivate others, and I have no doubt that he will continue to make positive contributions to society in the future.

December 23, 2022 Letter of Serhii Bilyk, attached as Exhibit M (emphasis supplied).

Mr. Streit's work colleagues have similarly complimented his above-and-beyond efforts to support them in their letters to the Court. See, e.g., Ltr. of Jonathan Kurman, Ex. I ("Professionally, he provided exceptional customer service - especially as a one man operation – for his Voicemail-to-text platform .... He was always communicative and transparent about software updates, feature implementation time lines ...."). For example, in his letter, Andrew King recalls:

> [M]y business partners and I hired Josh as a Software Engineer and we worked together from August 2017 through January 2019. In that time I found Josh to be a kind, helpful, and well-intentioned person. Josh was a reliable member of our team, often going above and beyond to solve problems for our customers. He was also very patient and generous with us as colleagues: on dozens of occasions Josh worked one-on-one with me – on his own time – to teach me a variety of skills and best practices that would help me become a better engineer. He once noted to me that he always wanted to be a teacher because he likes doing social good and helping people learn.

Ltr. of Andrew King, Ex. E; see also Ltr. of Michael Barr, Ex. C ("Several years ago I hired Josh to build an online database for my business. I now have an entire team of computer programmers in India doing what only Josh did for me. He did it faster and better than an entire team."). Clyde Marl likewise hails of his experiences working with Mr. Streit:

> I had the pleasure of working with Josh early in 2020, on a team together at AdQuick. Over the years I've managed and worked with many people, but Josh is among the most intent to improve the skills of people around him. On at least a dozen occasions, in the time we worked together, he went out if his way to share his expertise, always with a friendly explanation, to help me out. He was always quick to offer that same helping hand to the other team members as well. From the few months I've worked with him, I was able to improve as an engineer faster than ever before in the past, and for that, I'm still thankful. *Even now, over a year since we were on a team together, we still keep in touch, and I can always count on a good laugh, and good advice.*

December 8, 2022 Letter of Clyde Marl, attached as Exhibit N (emphasis supplied).

Another colleague of Mr. Streit's at AdQuick provides a similar account in his letter, recalling:

> Josh is one of the best software engineers I have worked with. The main thing I can tell about his work is that he is obsessed about doing things both the right way and the best way. Of course we disagreed on what is right and best, but we were able to do amazing work nevertheless. When he left AdQuick to work for Angelist, he wanted me to leave too, because AdQuick offered him more than what I was making. I told him he shouldn't bother with that, since he was a better programmer and deserved to be paid more. He even referred me to Angelist but I ended up not going. He was not satisfied though, and managed to get me one of his freelance clients.

Ltr. of Luiz Fernando Signorelli Gonçalves, attached as Exhibit O. And Edward Day-Fratto, the director of product at AdQuick praises:

> As an engineer he jumped at every opportunity to mentor and teach both junior and senior engineers alike.

> One story that comes to mind is the Building out of the AdQuick product for Small and Medium Businesses (aka "SMB"). Josh was the technical lead on this project and in preparation he had to make a few sizable architectural changes to the platform. Most engineers would quietly do this work and move on, but Joshua made it a point to bring the entire team together for a discussion regarding the changes and to explain the 'Why.'
>
> While this may sound small, this perfectly exemplifies who Josh is. *He is the type of person that would go out of his way to help improve the people around him.* He truly cared about the team he was on and would always do extra work to make them better. This approach of explaining the 'Why' behind technical decisions is something we still institute to this day, with great results.

December 7, 2022 Letter of Edward Day-Fratto, attached as Exhibit P (emphasis supplied).

<u>Regret for His Criminal Conduct</u>

In addition to praising his assistance and helpfulness, multiple of the submitted character letters remark on Mr. Streit's sincere regret and remorse for his criminal conduct. For example, friend Jonathan Kurman writes in his letter to the Court: "I know that Josh will learn from this experience and correct his mistakes in a constructive way. *He has expressed deep remorse for his actions*." Ltr. of Jonathan Kurman, Ex. I (emphasis supplied). Similarly, Stephen Mann notes: "[w]hat Josh did was wrong, and he's acknowledged that to me," (Ltr. of Stephen Mann, Ex. L) and Sarah Smith writes: "I have no doubt in my mind that he knows what he did was wrong and that he would not ever dare do it again." Ltr. of Sarah Smith, Ex. D; <u>see</u> <u>also</u> Ltr. of Hunter Winey, Ex. F ("I believe that Josh has seen the errors of his ways and will correct his behaviors ...."); Ltr. of Barbara Smith, Ex. K ("I have seen real change in Josh. I see remorse for what he has done").

### iii. Recent Cases Involving the Distribution of Copyrighted Material Support a Significant Variance

Finally, recent sentencings in the Southern District of New York involving the illegal distribution of copyrighted materials support our request for a variance from Mr. Streit's advisory sentencing guidelines. <u>See</u> 18 U.S.C. § 3553(a)(6); <u>Freeman v. United States</u>, 131 S. Ct. 2685, 2694 (2011) (Sentencing Reform Act "aims to create a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences").

For example, in 2021 and 2022, Judge Berman sentenced George Bridi and Jonatan Correa to below guidelines sentences for their part in the "Sparks Group," which perpetrated international piracy and copyright infringement. See United States v. Bridi, et al., 20 CR 18 (SDNY) (RMB). According to the government, the pair "illegally distribut[ed] movies and television shows on the internet," and cost film and production studios "tens of millions of dollars in losses ...." See Acting U.S. Attorney Announces Federal Charges And International Operation To Dismantle Online Piracy Group, DOJ Press Release, August 26, 2020, available at: https://www.justice.gov/usao-sdny/pr/acting-us-attorney-announces-federal-charges-and-international-operation-dismantle-0 (last viewed March 1, 2023). For his part, Correa reproduced, circumvented copyright protection and uploaded content onto the conspiracy's servers – and he received a variance to time-served from sentencing guidelines of 12-18 months imprisonment. See United States v. Bridi, et al., 20 CR 18 (SDNY) (RMB), ECF Nos. 34, 38. Bridi, who was additionally charged with wire fraud conspiracy and conspiracy to transport stolen property in interstate commerce, was sentenced to 22 months imprisonment, down from sentencing guidelines of 27 to 33 months imprisonment, for his greater role. See id. ECF. Nos. 71-72.

Outside of the Southern District of New York, the same is also frequently the case – variances from the sentencing guidelines for matters involving the distribution of copyrighted materials are common. See, e.g., United States v. Beshara, 11 CR 447 (E.D. Va ) (most culpable defendant in NinjaVideo illegal streaming service, which generated over $500k in revenue, sentenced to 22 months imprisonment from guidelines of 46 to 57 months imprisonment); see also United States v. White, 19 CR 504 (D. Oregon) (defendant who created illegal streaming websites for movies and television, collecting over $8M in proceeds, sentenced to 366 days imprisonment from guidelines of 70 to 87 months imprisonment).

### D. **CONCLUSION**

Defendant Joshua Streit comes before this Court asking for mercy. A life filled with good deeds and hard work has forever been marred by his criminal actions. Nevertheless, as the powerful enclosed letters reveal, Mr. Streit is a decent and giving young man who unlike many defendants has made efforts to help friends, family and colleagues throughout his life, when no one was watching, when he had no need to impress a judge deciding his fate. For these reasons and the others stated herein, a lenient sentence is respectfully requested.

Respectfully submitted,

Jeffrey Einhorn

Encs.

cc: Dina McLeod, Esq.
Assistant United States Attorney (by ECF)